IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Fratus,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Sergeant Peterson, et al.,<br><br>　　　　Defendants. | No. CV-08-1500-ROS<br><br>**ORDER** |

Plaintiff John Fratus claims he was assaulted by prison guards on January 10, 2007. Defendants Beer, Lloren, McRobers, and Pightling ("Defendants") argue Fratus did not file a timely administrative appeal regarding that assault. Based on the evidence presented by the parties, Fratus pursued all administrative remedies available to him. Thus, this case can proceed.

**FINDINGS OF FACT**

At all relevant times Fratus was incarcerated at the California State Prison-Corcoran. Prior to January 10, 2007 Fratus filed numerous grievances and staff complaints. On January 10, 2007, Officers Beer and McRoberts allegedly decided to retaliate against Fratus for filing those grievances and complaints. According to Fratus, Beer and McRoberts took him to the prison shower and "brutally assaulted" him. (Doc. 173 at 18). Officers Lloren and Pightling knew of this assault and "failed to intervene" to prevent or stop it. (Doc. 173 at 1). After the assault, Fratus "began to receive severe harassment and retaliation by all 'floor officers . . .

1  due to the 1-10-07 incident." (Doc. 173 at 18). That harassment led him to claim to be
2  suicidal such that he would be transferred to a different building away from the officers
3  targeting him. Fratus was transferred to a different building but was transferred back a week
4  later.

5  After returning to his original building, Fratus "submitted a 602 inmate appeal form
6  in the mail on Sunday 1-21-07 concerning the 1-10-07 incident." (Doc. 173 at 19). Fratus
7  claims the form was picked up by an "Officer Bailey." Officer Bailey does not remember
8  whether he was working on that date nor does he remember having any interactions with
9  Fratus. However, Officer Bailey was working in Fratus's housing unit during the relevant
10 time and it is possible he was responsible for collecting mail on January 21, 2007.

11  Fratus did not receive a response regarding the appeal submitted on January 21, 2007.
12 On February 25, 2007, he "submitted another copy of [his] 602 appeal in the mail with
13 Officer Bailey." The second appeal was accompanied by a letter explaining Fratus had
14 "previously attempted to file this 602 appeal with no response." (Doc. 173 at 20). Again
15 Fratus did not receive a response. On March 8, 2007, Fratus submitted another copy of his
16 602 appeal to Officer Bailey along with a letter explaining his previous attempts.

17  While Fratus was attempting to submit an appeal regarding the January 10, 2007
18 incident, he was submitting other appeals regarding other types of mistreatment. For
19 example, on February 22, 2007, Fratus submitted an appeal alleging officers were stealing
20 his magazines. (Doc. 173 at 31). In that appeal, Fratus explained he had been "assaulted and
21 threatened by staff" on January 10 and ever since that date he had stopped receiving his
22 magazines. Based on the testimony presented at the evidentiary hearing, the February 22,
23 2007 appeal should have been rejected as attempting to grieve more than one issue. That is,
24 the appeal can reasonably be read as complaining about both the January 10, 2007 assault
25 and the missing magazines, as was conceded by a defense witness at the evidentiary hearing.
26 There is no clear explanation why prison staff limited the February 22 appeal to only the
27 magazines issue. In addition to the appeal regarding his magazines, Fratus also submitted
28

1  appeals seeking access to the law library and copies of medical records.  (Doc. 171-2 at 2).
2  In brief, Fratus was not hesitant to use the appeal process for relatively minor issues.

3  Despite receiving responses to his other appeals, Fratus never received a response to
4  his numerous appeals regarding the January 10 incident.  On October 17, 2007, he filed a
5  "writ of mandate/habeas corpus in Kings County Superior Court."[1]  (Doc. 173 at 7).  That
6  filing alleged the prison was "failing and/or refusing to file an inmate appeal that challenges
7  his alleged January 10, 2007 beating at the hands of Correctional Department employees."
8  (Doc. 173 at 27).  Prison officials responded in state court by claiming there was "no record
9  of [Fratus's] January 10, 2007 administrative appeal concerning the alleged attack."  (Doc.
10 173 at 27).  The officials agreed, however, to conduct an "investigation into the incident
11 involving staff misconduct."  (Doc. 173 at 27).  Prison officials stressed this investigation
12 was *not* to be construed as appropriate administrative exhaustion.[2]

13 The state court's ruling on Fratus's request began with a note that the prison claimed
14 "it has no record of [Fratus's] January 10, 2007 administrative appeal concerning the alleged

---

[1] During the evidentiary hearing, Fratus testified he filed a state court motion in the spring of 2007 referencing the prison's alleged refusal to process his complaints regarding the January 10, 2007 incident.  Defendants did not dispute that testimony.  Therefore, the October 2007 state court filing was the second time Fratus asked the state court to intervene to require the prison process his appeal.

[2] The prison officials substantially confused matters by claiming this investigation was based on construing Fratus's complaint as a "citizen's complaint."  (Exhibit 29).  The regulations regarding a "citizen's complaint" state such complaints "shall be filed within twelve months of the alleged misconduct."  (Exhibit 35).  But, if deemed a "citizen's complaint," Fratus had until January 2008 to file a timely appeal.  Thus, even in October 2007 when Fratus filed his state court lawsuit, he still had time to submit a timely "citizen's complaint."  Moreover, given the representation that an internal investigation would be conducted, it is unclear why prison officials argued that investigation would not suffice to exhaust administrative remedies.  After all, the purpose of the administrative exhaustion requirement is to allow "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516, 525 (2002).  If an internal investigation would be pursued, it is unclear what purpose would be served by allowing prison officials to claim administrative remedies could not be exhausted.

attack" but the prison was "in receipt of [Fratus's] October 17, 2007 appeal regarding the same issue." (Exhibit 30). This statement is puzzling for two reasons. First, Fratus never claimed to have submitted an appeal on January 10, 2007. Instead, Fratus has always claimed he submitted an appeal a little over a week later. And second, there is no record of *any* appeal dated October 17, 2007. Thus, it is unclear how the state court arrived at these dates. But regardless of that confusion, the state court relied on the prison officials' representation that they would conduct an internal investigation and refused to enter a formal order requiring the officials process Fratus's appeal.

After the state court ruling prison officials initiated an investigation into Fratus's allegations. On April 11, 2008, Fratus was interviewed by "Sergeant Battle" regarding the events of January 10, 2007. Sergeant Battle told Fratus to "submit something in writing." (Doc. 173 at 23). Fratus submitted appeals "every week" thereafter but it was not until August 11, 2008 that Fratus received a response. That response stated his appeal was untimely because he only had 15 days after January 10 to submit an appeal. Fratus submitted an appeal of that decision but the appeal was returned to him on August 28, 2008 with no explanation. (Doc. 173 at 24). Fratus filed this suit approximately five weeks later.

## ANALYSIS

### I. Factual Findings After Denial of Summary Judgment

As recently established by the Ninth Circuit, when an alleged failure to exhaust administrative remedies is not clear on the face of the complaint, defendants must "present probative evidence . . . that the prisoner has failed to exhaust available administrative remedies." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). The presentation of such evidence must come in the form of a motion for summary judgment. If that motion "is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1171. To assist in making factual findings in this case, the Court held a one-day evidentiary hearing at which a prison official and Fratus testified.

## II. Remedies Not Available or Fratus was Preclued from Exhausting

Defendants argue Fratus did not submit a timely appeal regarding the January 10, 2007 incident. The sole support for this is that the prison's records do not reflect such an appeal being filed. But the facts show the prison's records are not reliable and the surrounding circumstances make it more likely than not that Fratus took all "reasonable appropriate steps to exhaust" his claim but he was prevented from doing so. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

Fratus's testimony at the evidentiary hearing was persuasive. Therefore, as a factual matter, he submitted an appeal in the mail picked up from his cell on January 21, 2007. That appeal was never logged into the prison records and there is no information about what ultimately happened to it. As explained at the evidentiary hearing, an unknown number of officers had access to the mail and it is unclear whether Fratus's appeal was innocently misplaced or maliciously destroyed. For present purposes, it does not matter. The only issue of importance is that Fratus attempted to file a timely appeal and he was prevented from doing so. Three aspects of the record support this conclusion.

First, Fratus did clearly submit appeals regarding all types of alleged mistreatment. Shortly after the January 10 incident, Fratus submitted appeals complaining his magazines were missing, he was being denied copies of medical records, and he was not being allowed to use the law library. It seems unlikely Fratus would file and pursue an appeal regarding the fate of his magazines while forgoing an appeal complaining of being "sadistically [and] brutally beaten" by guards. (Doc. 173 at 40).

Second, Fratus went to great lengths to try to get *any* response regarding the January 10 incident. A few months after the incident, Fratus asked a state court for help in having his appeal processed. And nine months after the incident, Fratus again asked a state court to order prison officials to process his appeal. The allegations in the second state court suit are consistent with Fratus's present allegations. Repeatedly going to state court to have his appeal processed shows a great deal of persistence. It is unlikely Fratus would have been so insistent if he had never submitted an appeal.

1 Third, the evidence established the prison's records were fallible. As Fratus
2 highlighted at the hearing, the state court noted the prison had conceded it had an appeal
3 dated October 17, 2007. But the prison's records presented at the evidentiary hearing contain
4 no such appeal. Thus, the prison's records must not reflect *all* the appeals filed by Fratus.
5 In fact, Defendants admitted as much when they conceded that appeals that were "screened
6 out" were not logged in the system. If, for example, the appeal Fratus filed on January 21,
7 2007 was deemed deficient on its face, that appeal would not have been recorded in the
8 records.[3] While screened out appeals were returned to inmates, the failure to log such
9 appeals created an opportunity for appeals to be misplaced or otherwise mishandled.

10 Moreover, the basic premise of Defendants' argument is faulty. That is, the simple
11 fact that the records do not reflect an appeal does not prove the lack of administrative
12 exhaustion. As explained by another court addressing a similar dispute, an attempt to rely
13 on potentially fallible prison records is not convincing:

> Merely because the Appeal Coordinator has no record of having received Plaintiff's [appeal] does not establish that Plaintiff, in fact, failed to timely submit his [appeal] to the Appeal Coordinator in the first instance. At most, it shows non-receipt rather than non-submission.

17 *Badwi v. Hedgpeth*, 2012 WL 479192, at *4 (N.D. Cal. Feb. 14, 2012).

18 In summary, Fratus routinely appealed all manner of issues, he engaged in a long
19 campaign to have prison officials process his appeal regarding the incident, and the prison's
20 records have serious gaps in them. Accordingly, the grievance procedures either were
21 unavailable or Fratus was precluded from exhausting "through no fault of his own." *McCoy*
22 *v. Stratton*, 2014 WL 6633319, at *8 (E.D. Cal. Nov. 21, 2014) (excusing exhaustion when
23 prisoner was precluded from exhausting "through no fault of his own"). This suit can
24 proceed.

---

[3] This "screening out" policy also was applied to prevent appeals complaining of more than one issue. This policy was applied inconsistently in that Fratus's February 22, 2007 appeal apparently realleged the January 10 assault as well as the magazine issue. Instead of being screened out, that appeal was processed merely on the topic of magazines.

- 6 -

Accordingly,

**IT IS ORDERED** Fratus is found to have exhausted the claims presented in this suit. Defendants shall file their answer no later than February 20, 2015.

DATED this 11th day of February, 2015.

_____
Honorable Roslyn O. Silver
Senior United States District Judge